UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

LEONARD R. GENDELBERG on behalf of himself and
all other similarly situated consumers

                             Plaintiff,

        -against-

CAPITAL MANAGEMENT SERVICES, LP

                             Defendant.
_____

## CLASS ACTION COMPLAINT

### Introduction

1.    Plaintiff, Leonard R. Gendelberg, brings this action against Capital Management Services, LP for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA"). The FDCPA prohibits debt collectors from engaging in abusive, deceptive and unfair collection practices while attempting to collect on debts.

### Parties

2.    Plaintiff is a citizen of the State of New York who resides within this District.

3.    Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendant sought to collect from Plaintiff is a consumer debt.

4.    Upon information and belief, Defendant's principal place of business is located in Buffalo, New York.

5.    Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

6.      Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).

## Jurisdiction and Venue

7.      This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## Allegations Particular to Leonard R. Gendelberg

9.      Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiff.

10.      As discussed *infra*, Defendant began to attempt to collect on four (4) private student loan accounts, which originated with Citibank, N.A. ("Citibank").

11.      Plaintiff brings this action alleging violations of 15 U.S.C. §§ 1692c(b), 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692g(a)(1), and 1692g(b).

**False, deceptive, and misleading representations or means in connection with the collection of the debt and false representation of the character, amount, or legal status of the debt.**
**15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10)**

12.      Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through eleven (11) inclusive as if fully set forth at length.

13.      The said collection letters were false, deceptive, and misleading representations or means in connection with the collection of the debt and false representation of the character, amount, or legal status of the debt.

14.      On July 13, 2005, Plaintiff signed a CitiAssist Law Loan – Law Online with Citibank ("Application dated July 13, 2005") (Exhibit "A").

15.    On December 19, 2006, Plaintiff signed a second CitiAssist Law Loan – Law Online with Citibank ("Application dated December 19, 2006") (Exhibit "B").

16.    The Application for Credit dated July 13, 2005 (Exhibit "A") and Application for Credit dated December 19, 2006 (Exhibit "B") comprised the following four (4) private student loan accounts: (Exhibit "C")

   (i)     Citibank Loan No. 36 ("Loan No. 36");

   (ii)    Citibank Loan No. 43 ("Loan No. 43");

   (iii)   Citibank Loan No. 44 ("Loan No. 44"); and

   (iv)    Citibank Loan No. 56 ("Loan No. 56").

17.    On March 17, 2014, Citibank confirmed that the four (4) private student loan accounts "charged off as of" the following dates: (Exhibit C)

   (i)     Loan No. 36 charged off as of June 28, 2012;

   (ii)    Loan No. 43 charged off as of January 30, 2013;

   (iii)   Loan No. 44 charged off as of January 30, 2013; and

   (iv)    Loan No. 56 charged off as of January 30, 2013.

18.    The four (4) private student loan accounts (i.e. Loan No. 36, 43, 44, and 56) were time barred by the statute of limitations or not legally enforceable.

19.    New York's highest court, the Court of Appeals, in *Portfolio Recovery Associates, LLC v. King*, 14 NY3d 410, 901 NYS2d 575 (2010), held that the statute of limitations of the state where the credit card issuer is based, rather than New York's statute, may be the correct statute of limitations to apply, if that statute is shorter than New York's. *Id.*

20.    New York generally has a six-year statute of limitations on credit card debt, but it also has a law that states that creditors cannot take advantage of New York's six-year statute if

their own state has a shorter one.  CPLR § 202;  See also: *Portfolio Recovery Associates, LLC v. King*, 14 NY3d 410, 901 NYS2d 575 (2010).

21.    Justice Oing of the New York County Commercial Division issued a decision in *All Children's Hospital, Inc. v. Citigroup Global Markets*, 2016 NY Slip Op. 31626(U), holding that New York's "borrowing statute" applies even where the parties are required by contract to litigate their dispute in New York.  *Id.*

22.    The borrowing statute provides that where a foreign plaintiff brings suit "based upon a cause of action accruing without the state," the claim must be timely under both the applicable New York statute of limitations and the limitations period of the forum where the claim accrued. CPLR § 202.

23.    In the case of claims alleging "purely economic" damages, the Court of Appeals has held that "the place of injury is usually where the plaintiff resides and sustains the economic impact of the loss." *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999).

24.    Citibank has a principal place of business located in New Castle, Delaware.

25.    Citibank is a Federal Deposit Insurance Corporation ("FDIC") insured Delaware State Bank.

26.    The State of Delaware has a three-year statute of limitations on Contracts (written) and Collection of Debt on Account.  Tit. 10 §8106.

27.    Tit. 10 §8106 states:

> (a)  No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury

unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.

(b) Contractual limitations. – Notwithstanding any other provision of this section, a property insurance contract subject to subchapter III of Chapter 41 of Title 18:

   (1) May not require that an action for a claim made under the contract be filed less than 1 year from the date of the denial of the claim by the insurer; and

   (2) May permit an action for a claim made under the contract to be filed more than 1 year from the date of the denial of the claim by the insurer.

(c) Notwithstanding anything to the contrary in this chapter (other than subsection (b) of this section) or in § 2-725 of Title 6, an action based on a written contract, agreement or undertaking involving at least $100,000 may be brought within a period specified in such written contract, agreement or undertaking provided it is brought prior to the expiration of 20 years from the accruing of the cause of such action.

Code 1852, § 2742; Code 1915, § 4671; Code 1935, § 5129; 46 Del. Laws, c. 115, § 1; 10 Del. C. 1953, § 8106; 57 Del. Laws, c. 568, § 2; 76 Del. Laws, c. 223, § 2; 79 Del. Laws, c. 353, § 1.

28.    The State of Delaware's three-year statute of limitations for suing on delinquent private student loan accounts, Tit. 10 §8106, applies to the four (4) private student loan accounts in the instant matter.

29.    Applying *King*, *Global*, and *All Children's Hospital, Inc.*, the four (4) private student loan accounts became time barred by the statute of limitations or not legally enforceable as of the following dates:

   (i)    Loan No. 36 as of June 28, 2015;

   (ii)   Loan No. 43 as of January 30, 2016;

   (iii)  Loan No. 44 as of January 30, 2016; and

(iv)     Loan No. 56 as of January 30, 2016.

30.     The four (4) private student loan accounts became time barred by the statute of limitations or not legally enforceable between June 28, 2015 through January 30, 2016.

31.     Under federal banking regulations, a credit card debt must be charged off when it is one hundred and eighty days overdue (it may be charged off earlier).  Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 12, 2000).

32.     "Charge-off" means that the credit card receivable is no longer carried on a bank's books as an asset.

33.     On a date better known to Defendant, Defendant allegedly purchased and/or began collection efforts from the Plaintiff on the four (4) private student loan accounts despite the fact that said accounts have become time barred by the statute of limitations or not legally enforceable.

34.     Making any payment on a time-barred debt may result in revival of Plaintiff's otherwise time-barred debt.

35.     22 N.Y.C.R.R. § 1.3 requires debt collectors to notify consumers that: 1) the debt collector believes that the statute of limitations applicable to the debt may be expired; 2) suing on a debt for which the statute of limitations has expired is a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.; 3) if the consumer is sued on a debt for which the statute of limitations has expired, the consumer may be able to stop the lawsuit by responding to the court that the statute of limitations has expired; 4) the consumer is not required to provide the debt collector with an admission, affirmation, or acknowledgment of the debt, a promise to pay the debt, or a waiver of the statute of limitations; and 5) if the consumer makes any payment on a

debt for which the statute of limitations has expired or admits, affirms, acknowledges, or promises to pay such debt, the statute of limitations may restart.

36.     Notwithstanding the expiration of the statute of limitations to sue to recover the debt prior to the time Defendant sent Plaintiff the said collection letters, *infra*, the collection letters failed to provide any indication to Plaintiff that no legal action could be undertaken to attempt to recover the debt.

37.     Notwithstanding the expiration of the statute of limitations to sue to recover the debt prior to the time Defendant sent Plaintiff the said collection letters, *infra*, the collection letters failed to inform Plaintiff that any partial payment by Plaintiff may result in the revival of Plaintiff's otherwise time-barred debt.

38.     Notwithstanding the expiration of the statute of limitations to sue to recover the debt prior to the time Defendant sent Plaintiff the said collection letters, *infra*, the collection letters failed to provide the notifications required by 22 N.Y.C.R.R. § 1.3.

39.     Defendant regularly attempts to collect debts and fails to provide any indication to consumers that no legal action could be undertaken to attempt to recover the debt.

40.     Defendant regularly attempts to collect debts and fails to provide any indication to consumers that any partial payment may result in the revival of otherwise time-barred debt.

41.     Defendant regularly attempts to collect debts and fails to provide to consumers the notifications required by 22 N.Y.C.R.R. § 1.3.

### Letters dated May 19, 2017

42.     Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through forty-one (41) inclusive as if fully set forth at length.

43.     On or about May 19, 2017, Defendant sent the Plaintiff a collection letter stating "Reference# 102693696" and "Account# XXX1425" and seeking to collect a payment allegedly incurred in the sum of $5,043.28 (Exhibit "D").

44.     Nothing in the said May 19, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.  The collection letter simply includes such fields as Original Creditor, Current Creditor, Account#, Description, Amount Due at Charge-Off, Interest Accrued Since Charge-Off, Non-Interest Charges, Fees Accrued Since Charge-Off, Payment Made Since Charge-Off, and Current Amount Due.  However, there is no indication as to the date of the transactions giving rise to the claimed debt.

45.     Nothing in the said May 19, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

46.     On or about May 19, 2017, Defendant sent the Plaintiff a second collection letter stating "Reference# 102693837" and "Account# XXX2464" and seeking to collect a payment allegedly incurred in the sum of $23,683.78 (Exhibit "D").

47.     Nothing in the said May 19, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.  The collection letter simply includes such fields as Original Creditor, Current Creditor, Account#, Description, Amount Due at Charge-Off, Interest Accrued Since Charge-Off, Non-Interest Charges, Fees Accrued Since Charge-Off, Payment Made Since Charge-Off, and Current Amount Due.  However, there is no indication as to the date of the transactions giving rise to the claimed debt.

48.     Nothing in the said May 19, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

49.    On or about May 19, 2017, Defendant sent the Plaintiff a third collection letter stating "Reference# 102704246" and "Account# XXX3337" and seeking to collect a payment allegedly incurred in the sum of $33,081.63 for personal purposes (Exhibit "D").

50.    Nothing in the said May 19, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.  The collection letter simply includes such fields as Original Creditor, Current Creditor, Account#, Description, Amount Due at Charge-Off, Interest Accrued Since Charge-Off, Non-Interest Charges, Fees Accrued Since Charge-Off, Payment Made Since Charge-Off, and Current Amount Due.  However, there is no indication as to the date of the transactions giving rise to the claimed debt.

51.    Nothing in the said May 19, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

52.    On or about May 19, 2017, Defendant sent the Plaintiff a fourth collection letter stating "Reference# 102705264" and "Account# XXX2798" and seeking to collect a payment allegedly incurred in the sum of $15,514.52 for personal purposes (Exhibit "D").

53.    Nothing in the said May 19, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.  The collection letter simply includes such fields as Original Creditor, Current Creditor, Account#, Description, Amount Due at Charge-Off, Interest Accrued Since Charge-Off, Non-Interest Charges, Fees Accrued Since Charge-Off, Payment Made Since Charge-Off, and Current Amount Due.  However, there is no indication as to the date of the transactions giving rise to the claimed debt.

54.    Nothing in the said May 19, 2017 collection letter disclosed that the debt was barred by the statute of limitations or not legally enforceable.

**Request for Validation of Debt**

55.     Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through fifty-four (54) inclusive as if fully set forth at length.

56.     On or about June 20, 2017, Plaintiff mailed Defendant a written validation of debt request letter (Exhibit "E").

57.     Said letter stated as follows: (Exhibit "E")

> It is impossible to determine the validity of the accounts referenced in the letters.   The reference numbers 102693696, 102693837, 102704246, and 102705264 do not match up to any accounts in my student loan file.   The amounts allegedly due at charge-off, i.e. $5,043.28, $23,683.78, $33,081.63, and $15,514.52 also do not match up to any accounts in my student loan file.  Furthermore, the account numbers XXX1425, XXX2464, XXX3337, and XXX2798 do not match up to any accounts in my student loan file.  As such, in accordance with the Fair Debt Collection Practices Act ("FDCPA"), I am writing to respectfully request that Capital Management, within thirty (30) days upon receipt of this letter, provide me with the following validation documents:

> (i)      The full account number to each alleged account;

> (ii)     The date that a debt was incurred to each alleged account;

> (iii)    Current balances owed on each alleged account;

> (iv)     Complete payment history on each alleged account;

> (v)      Complete itemization of all charges (e.g., principal, fees, interest, etc.) on each alleged account;

> (vi)     Copy of signed agreement(s) to each alleged account;

> (vii)    Copy of all invoices, bills, and notices concerning each alleged account;

> (viii)   Copy of the first written communication attempting to collect the debt on each alleged account;

> (ix)     Copy of any judgment, if applicable, obtained with respect to each alleged account;

(x)     Proof that the statute of limitations has not already expired on each alleged account;

(xi)    Copy of all reports or notices provided to any credit bureaus with respect to each alleged account;

(xii)   Identification of the original creditor with respect to each alleged account; and

(xiii)  Identification of the current creditor with respect to each alleged account.

58.     Said letter requested, amongst other things, confirmation as to whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "E").

59.     Said letter requested, amongst other things, documentation confirming whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "E").

60.     Defendant conveniently omitted providing the requested information.

61.     Defendant conveniently omitted providing the requested documentation.

62.     Defendant conveniently proceeded with collection efforts.

63.     Defendant conveniently continued sending additional collection letters without disclosing the date of the transactions giving rise to the claimed debt.

64.     Defendant conveniently continued sending additional collection letters without disclosing that the debt was time-barred by the statute of limitations or not legally enforceable.

**Letters dated June 22, 2017**

65.     Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through sixty-four (64) inclusive as if fully set forth at length.

66.     On or about June 22, 2017, Defendant sent the Plaintiff a collection letter stating "Reference# 102693696" and "Account# XXX1425" and seeking to collect a payment allegedly incurred in the sum of $5,043.28.

67.     Said collection letter further stated "... *Capital Management Services, LP. is in receipt of your recent correspondence requesting verification of your account being handled by our office.  Our office has requested information from our client, CITIBANK, N.A.  Once we have the information from CITIBANK, N.A., it will be forwarded to you.*"  (Exhibit "F")

68.     Nothing in the said June 22, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.

69.     Nothing in the said June 22, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

70.     On or about June 22, 2017, Defendant sent the Plaintiff a second collection letter stating "Reference# 102693837" and "Account# XXX2464" and seeking to collect a payment allegedly incurred in the sum of $23,683.78.

71.     Said collection letter similarly stated "... *Capital Management Services, LP. is in receipt of your recent correspondence requesting verification of your account being handled by our office.  Our office has requested information from our client, CITIBANK, N.A.  Once we have the information from CITIBANK, N.A., it will be forwarded to you.*"  (Exhibit "F")

72.     Nothing in the said June 22, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.

73.     Nothing in the said June 22, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

74.    On or about June 22, 2017, Defendant sent the Plaintiff a third collection letter stating "Reference# 102704246" and "Account# XXX3337" and seeking to collect a payment allegedly incurred in the sum of $33,081.63.

75.    Said collection letter similarly stated "*... Capital Management Services, LP. is in receipt of your recent correspondence requesting verification of your account being handled by our office.  Our office has requested information from our client, CITIBANK, N.A.  Once we have the information from CITIBANK, N.A., it will be forwarded to you.*"  (Exhibit "F")

76.    Nothing in the said June 22, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.

77.    Nothing in the said June 22, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

78.    On or about June 22, 2017, Defendant sent the Plaintiff a fourth collection letter stating "Reference# 102705264" and "Account# XXX2798" and seeking to collect a payment allegedly incurred in the sum of $15,514.52.

79.    Said collection letter similarly stated "*... Capital Management Services, LP. is in receipt of your recent correspondence requesting verification of your account being handled by our office.  Our office has requested information from our client, CITIBANK, N.A.  Once we have the information from CITIBANK, N.A., it will be forwarded to you.*"  (Exhibit "F")

80.    Nothing in the said June 22, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.

81.    Nothing in the said June 22, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

82.     Defendant once again failed to provide confirmation as to whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "F").

83.     Defendant once again failed to provide documentation confirming whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "F").

84.     Defendant conveniently omitted providing the requested information.

85.     Defendant conveniently omitted providing the requested documentation.

86.     Defendant conveniently proceeded with collection efforts.

87.     Defendant conveniently continued mailing additional letters without disclosing the date of the transactions giving rise to the claimed debt.

88.     Defendant conveniently continued mailing additional letters without disclosing that the debt was time-barred by the statute of limitations or not legally enforceable.

**Follow-Up Request for Validation of Debt**

89.     Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through eighty-eight (88) inclusive as if fully set forth at length.

90.     Despite Defendant receiving Plaintiff's validation of debt request letter dated June 20, 2017 (Exhibit "E"), Defendant failed to provide any validation of debt information and/or documentation.

91.     Despite Defendant indicating in their collection letters dated June 22, 2017 that Defendant will be "forwarding" the information (Exhibit "F"), Defendant failed to do so.

92.     As such, Plaintiff mailed Defendant a follow up letter dated July 26, 2017 (Exhibit "G") once again requesting validation of debt.

93.     The follow up request for validation of debt once again requested, amongst other things, confirmation as to whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "G").

94.     The follow up request for validation of debt once again requested, amongst other things, documentation confirming whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "G").

**Letters dated August 2, 2017**

95.     Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through ninety-four (94) inclusive as if fully set forth at length.

96.     On or about August 2, 2017, Defendant sent the Plaintiff a collection letter stating "Reference# 102693696" and "Account# XXX1425" and seeking to collect a payment allegedly incurred in the sum of $5,043.28.

97.     Said collection letter further stated "...*Please find the information that you recently requested enclosed*"  (Exhibit "H").

98.     Nothing in the said August 2, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.

99.     Nothing in the said August 2, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

100.    On or about August 2, 2017, Defendant sent the Plaintiff a second collection letter stating "Reference# 102693837" and "Account# XXX2464" and seeking to collect a payment allegedly incurred in the sum of $23,683.78.

101.    Said collection letter further stated "...*Please find the information that you recently requested enclosed*"  (Exhibit "H").

102.    Nothing in the said August 2, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.

103.    Nothing in the said August 2, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

104.    On or about August 2, 2017, Defendant sent the Plaintiff a third collection letter stating "Reference# 102704246" and "Account# XXX3337" and seeking to collect a payment allegedly incurred in the sum of $33,081.63.

105.    Said collection letter further stated "*...Please find the information that you recently requested enclosed*" (Exhibit "H").

106.    Nothing in the said August 2, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.

107.    Nothing in the said August 2, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

108.    On or about August 2, 2017, Defendant sent the Plaintiff a fourth collection letter stating "Reference# 102705264" and "Account# XXX2798" and seeking to collect a payment allegedly incurred in the sum of $15,514.52.

109.    Said collection letter further stated "*...Please find the information that you recently requested enclosed*" (Exhibit "H").

110.    Nothing in the said August 2, 2017 collection letter disclosed the date of the transactions giving rise to the claimed debt.

111.    Nothing in the said August 2, 2017 collection letter disclosed that the debt was time-barred by the statute of limitations or not legally enforceable.

112.    Defendant, once again, for the third continuous time, failed to provide confirmation as to whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "H").

113.    Defendant, once again, for the third continuous time, failed to provide documentation confirming whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "H").

114.    Defendant conveniently omitted providing the requested information.

115.    Defendant conveniently omitted providing the requested documentation.

116.    Defendant's statement "...*Please find the information that you recently requested enclosed*" (Exhibit "H") were simply a collection of Citibank monthly statements.  As discussed *infra*, Defendant provided documents which did not correlate to ANY accounts.

117.    For the third continuous time, Defendant failed to provide confirmation as to whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "H").

118.    For the third continuous time, Defendant failed to provide documentation confirming whether or not the debt was time-barred by the statute of limitations or not legally enforceable (Exhibit "H").

119.    It is the policy and practice of the Defendant to send collection letters seeking to collect time-barred debts that fail to provide any indication to consumers that no legal action could be undertaken to attempt to recover the debt.

120.    It is the policy and practice of the Defendant to send collection letters seeking to collect time-barred debts that fail to provide any indication to consumers that any partial payment may result in the revival of otherwise time-barred debt.

121.    It is the policy and practice of the Defendant to send collection letters seeking to collect time-barred debts that fail to provide to consumers the notifications required by 22 N.Y.C.R.R. § 1.3.

122.    Defendant knew or should have known that the four (4) private student loan accounts in the instant matter being handled by their collection agency were time-barred by the statute of limitations or not legally enforceable because the Defendant has had said accounts in their office since, on or about, July 15, 2012.

123.    Defendant previously mailed Plaintiff collection letters dated July 15, 2012 (Exhibit "I").

124.    Defendant mails collection letters on behalf of their client, Citibank, ONLY AFTER Citibank accounts charge off.

125.    At the time of mailing the collection letters dated July 15, 2012, the accounts referenced in said letters have already charged off.

126.    Defendant previously mailed Plaintiff collection letters dated October 6, 2012 (Exhibit "J").

127.    Defendant mails collection letters on behalf of their client, Citibank, ONLY AFTER Citibank accounts charge off.

128.    At the time of mailing the collection letters dated October 6, 2012, the accounts referenced in said letters have already charged off.

129.    Defendant previously mailed Plaintiff collection letters dated February 14, 2013 (Exhibit "K").

130.    Defendant mails collection letters on behalf of their client, Citibank, ONLY AFTER Citibank accounts charge off.

131.    At the time of mailing the collection letters dated February 14, 2013, the accounts referenced in said letters have already charged off.

132.    Defendant previously mailed Plaintiff collection letters dated March 17, 2013 (Exhibit "L").

133.    Defendant mails collection letters on behalf of their client, Citibank, ONLY AFTER Citibank accounts charge off.

134.    At the time of mailing the collection letters dated March 13, 2013, the accounts referenced in said letters have already charged off.

135.    Defendant previously mailed Plaintiff collection letters dated April 8, 2013 (Exhibit "M").

136.    Defendant mails collection letters on behalf of their client, Citibank, ONLY AFTER Citibank accounts charge off.

137.    At the time of mailing the collection letters dated April 8, 2013, the accounts referenced in said letters have already charged off.

138.    Defendant's handling of the four (4) private student loan accounts since, on or about, July 15, 2012 clearly evidences the fact that the Defendant knew or should have known that the debts were ALREADY time-barred by the statute of limitations or not legally enforceable AT THE TIME THAT THE COLLECTION LETTERS WERE MAILED to the Plaintiff.

139.    Defendant's compliance protocols clearly should have alerted Defendant that the presence of charged off accounts being handled in their office starting on or about July 15, 2012 were ALL already time-barred by the statute of limitations at the time that Defendant mailed collection letters to Plaintiff dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H").

140.    The Federal Trade Commission has determined that "… most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations . . . When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." (http://www.ftc.gov/opa/2012/01/asset.shtm).

141.    The Federal Trade Commission entered into a consent decree with *Asset Acceptance v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.)., one of the largest debt buyers in the United States, requiring that it disclose to consumers when it is attempting to collect debts that are time-barred by the statute of limitations.

142.    The Federal Trade Commission has also determined that it is "deceptive" for debt collectors to request payment of time-barred debts without disclosure of that fact.  The Federal Trade Commission's conclusion was justified by numerous district courts. (https://www.ftc.gov/news-events/media-resources/consumer-finance/debt-collection)

143.    15 U.S.C. § 1692 et seq. required Defendant to write the following in EACH of their collection letters to Plaintiff dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H"):

> We are required by regulation of the New York State Department of Financial Services to notify you of the following information. This information is NOT legal advice.

> Your creditor or debt collector believes that the legal time limit (statute of limitations) for suing you to collect this debt may have expired. It is a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., to sue to collect on a debt for which the statute of limitations has expired. However, if the creditor sues you to collect on this debt, you may be able to prevent the creditor from obtaining a judgment against you. To do so, you must tell the court that the statute of limitations has expired.
>
> Even if the statute of limitations has expired, you may choose to make payments on the debt. However, be aware: if you make a payment on the debt, admit to owing the debt, promise to pay the debt, or waive the statute of limitations on the debt, the time period in which the debt is enforceable in court may start again.
>
> If you would like to learn more about your legal rights and options, you can consult an attorney or a legal assistance or legal aid organization.

144.    While debt collection agencies may use this language to comply with New York City requirements, the letter iterates that in order to comply with New York City rules, the disclosure provided to New York City residents must also meet the font, size and placement requirements set forth in the New York City rules. Current rules require that if the disclosure is delivered in writing, the disclosure must be "in at least 12 point type that is set off in a sharply contrasting color from all other type" and must be placed adjacent to the amount claimed due on the debt. 22 N.Y.C.R.R. § 1.3.

145.    Additionally, in order to satisfy New York City rules, the notice must be provided to a New York City consumer in every communication "for each debt the debt collection agency is seeking to collect that is past the applicable statute of limitations. 22 N.Y.C.R.R. § 1.3.

146.    On September 18, 2017, the Consumer Financial Protection Bureau ("CFPB") announced that it had filed a complaint in the U.S. District Court for the District of Delaware against a collection of 15 Delaware statutory trusts and their debt collector for, among other

things, allegedly filing lawsuits against consumers for private student loan debt <u>that were outside the applicable statute of limitations</u>.[1]

147.    Furthermore, on September 18, 2017, a New York Times article dove into the business of private student loan lending.[2]  The National Collegiate Student Loan Trust, the company featured in the New York Times article titled "Student Loan Creditor, Fined for "False" Lawsuits, Must Halt Collections, was one of the companies that bought this old, bundled debt.  Lenders bundled and resold private student loans, as well as federally guaranteed student loans, which freed up more cash to make more loans.  However, the National Collegiate Student Loan Trust is not an entity and is not a lender, servicer or guarantor of private student loans.  Instead, it's a series of trusts that contain private student loans packaged and sold as investment vehicles.  Shortly after banks lend money, the loans are transferred to entities such as The National Collegiate Student Loan Trust.  Robyn Smith, a lawyer with the National Consumer Law Center ("NCLC"), a nonprofit advocacy group, said she hoped the consumer bureau would use the deal as a template and pursue other student loan debt collectors – many use shoddy and inaccurate paperwork to pursue legally flawed cases and this is a great precedent, but unfortunately The National Collegiate Student Loan Trust are not the only ones engaging in this behavior.[3]

148.    Even if there is no reference to litigation, a debt collection agency collecting an out-of-statute debt still violates the prohibition in the FDCPA against the false representation of the "character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

---

[1] See: http://files.consumerfinance.gov/f/documents/201709_cfpb_national-collegiate-student-loan-trusts_complaint.pdf

[2] See: https://www.nytimes.com/2017/07/17/business/dealbook/student-loan-debt-collection.html

[3] *Id.*

149.    Defendant ignored the Federal Trade Commission's warning at the time of the Federal Trade Commission entering into a consent decree with *Asset Acceptance v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.).

150.    Defendant failed to write the requisite language as required by 22 N.Y.C.R.R. § 1.3 in their collection letters to the Plaintiff dated May 19, 2017 letters (Exhibit "D").

151.    Defendant failed to write the requisite language as required by 22 N.Y.C.R.R. § 1.3 in their collection letters to the Plaintiff dated June 22, 2017 letters (Exhibit "F").

152.    Defendant failed to write the requisite language as required by 22 N.Y.C.R.R. § 1.3 in their collection letters to the Plaintiff dated August 2, 2017 letters (Exhibit "H").

153.    Defendant failed to write the requisite language as required by 22 N.Y.C.R.R. § 1.3 in any of their collection letters to the Plaintiff.

154.    Defendant's failure to write the requisite language in any of their collection letters to the Plaintiff is a per se violation of 22 N.Y.C.R.R. § 1.3.

155.    Said letters provided false, deceptive, or misleading representations or means in connection with the collection of any debt and the false representation of the character, amount, or legal status of any debt and for the threat to take any action that cannot legally be taken, or that is not intended to be taken, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).

**Misrepresentation of the amount of the debt owed and
engaging in deceptive and misleading practices.
15 U.S.C. §§ 1692g(a)(1), 1692e, 1692e(2)(A) and 1692e(10)**

156.    Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through one hundred fifty-five (155) inclusive as if fully set forth at length.

157.    The said collection letters were further deceptive and misleading as they were a misrepresentation of the amount of the debt owed.

**Loan No. 36**

158.    Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through one hundred fifty-seven (157) inclusive as if fully set forth at length.

159.    Defendant mailed Plaintiff a collection letter dated May 19, 2017 which stated a balance due of $33,081.63 regarding Account# xxx3337 / Reference# 102704246 (Exhibit "D").

160.    Defendant mailed Plaintiff a second collection letter dated June 22, 2017 which once again stated a balance due of $33,081.63 for Account# xxx3337 / Reference# 102704246 (Exhibit "F").

161.    Defendant mailed Plaintiff a third collection letter dated August 2, 2017 which once again stated a balance due of $33,081.63 for Account# xxx3337 / Reference# 102704246 (Exhibit "H").

162.    All of the collection letters mailed by Defendant to Plaintiff stated a balance due of $33,081.63 for Account# xxx3337 / Reference# 102704246 (Exhibits "D", "F", and "H").

163.    The balance due of $33,081.63 for Account# xxx3337 / Reference# 102704246 in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") is deceptive, misleading, and a misrepresentation of the amount of the debt owed in comparison with the correct balance stated in Defendant's validation of debt statements (Exhibit "N").

164.    Although the Defendant states a balance due of $33,081.63 for Account# xxx3337 / Reference# 102704246 in their collection letters dated May 19, 2017; June 22, 2017; and

August 2, 2017 (Exhibits "D", "F", and "H"), their validation of debt statements (Exhibit "N")

state the following balances:

(i)     Account Number 9404413063078-70, loan details as of 12/09/2011, Total Current Balance: $32,971.73;

(ii)     Account Number 9404413063078-70, loan details as of 12/23/2011, *this statement does not reference Loan No. 36*;

(iii)     Account Number 9404413063078-70, loan details as of 01/06/2012, *this statement does not reference Loan No. 36*;

(iv)     Account Number 9404413063078-70, loan details as of 01/23/2012, Total Current Balance: $33,237.69;

(v)     Account Number 9404413063078-70, loan details as of 02/21/2012, Total Current Balance: $33,427.73;

(vi)     Account Number 9404413063078-70, loan details as of 03/23/2012, Total Current Balance: $33,643.98;

(vii)     Account Number 9404413063078-70, loan details as of 04/20/2012, Total Current Balance: $33,827.46;

(viii)     Account Number 9404413063078-70, loan details as of 05/23/2012, *this statement does not reference Loan No. 36*;

(ix)     Account Number 9404413063078-70, loan details as of 06/22/2012, *this statement does not reference Loan No. 36*;

(x)     Account Number 9404413063078-70, loan details as of 07/18/2012, *this statement does not reference Loan No. 36*;

(xi)     Account Number 9404413063078-70, loan details as of 07/23/2012, *this statement does not reference Loan No. 36*;

(xii)     Account Number 9404413063078-70, loan details as of 08/02/2012, *this statement does not reference Loan No. 36*;

(xiii)     Account Number 9404413063078-70, loan details as of 08/23/2012, *this statement does not reference Loan No. 36*;

(xiv)     Account Number 9404413063078-70, loan details as of 09/21/2012, *this statement does not reference Loan No. 36*;

(xv)    Account Number 9404413063078-70, loan details as of 10/23/2012, *this statement does not reference Loan No. 36*; and

(xvi)   Account Number 9404413063078-70, loan details as of 11/21/2012, *this statement does not reference Loan No. 36*.

165.    Upon information and belief, the sum of $33,081.63 for Account# xxx3337 / Reference# 102704246 as stated in Defendants collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") correlates to Loan No. 36 as provided in Defendant's validation of debt statements (Exhibit "N") because the sum of $33,081.63 seems to be the closest match, although is very likely to be an incorrect match.

166.    The least sophisticated consumer could reasonably believe that the debt can be fully satisfied by making a payment in the sum of $33,081.63 for Account# xxx3337 / Reference# 102704246 as stated in Defendants collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H").

167.    However, there is nothing to prevent the Defendant from accepting a payment in the sum of $33,081.63 and then pursuing collection efforts and seeking to recover an additional sum of $745.83, which would represent the sum of $33,827.46 as stated in the validation of debt statements provided by the Defendant (Exhibit "N").

168.    Furthermore, there is nothing to prevent the Defendant from accepting a payment in the sum of $33,827.46 as stated in the validation of debt statements provided by the Defendant (Exhibit "N") and refusing to tender a refund in the sum of $745.83.

169.    Furthermore, there is nothing to prevent the Defendant from accepting a payment in the sum of $33,827.46 as stated in the validation of debt statements provided by the Defendant (Exhibit "N") or accepting a payment in the sum of $33,081.63 as stated in Defendants collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") and

crediting an entirely different account of the Plaintiff or of an entirely different consumer. Afterall, as discussed *infra*, Defendant references a balance of $33,081.63, Account# xxx3337, and Reference# 102704246, however, there is ABSOLUTELY NO SUCH BALANCE, ACCOUNT#, AND/OR REFERENCE# IN ANY of the validation of debt statements provided by the Defendant.

170.    Defendant clearly makes the least sophisticated consumer confused as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

171.    The balance due of $33,081.63 for Account# xxx3337 / Reference# 102704246 in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") is not an accurate balance due.

172.    Such actions were deceptive and confusing as they left the Plaintiff unsure as to the precise amount of the debt owed.

173.    The Defendant failed to properly disclose the amount of the debt, causing the Plaintiff to be uncertain of his rights and leaving him utterly confused as to the total amount he owes now and or in the future.

174.    The Defendant violated 15 U.S.C. § 1692e(2)(A) for misrepresenting the amount of the debt owed by the Plaintiff.

175.    Defendant's letters are in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) for misrepresenting the amount of the debt owed, for engaging in deceptive and misleading practices and for failing to state the accurate amounts of the debts.

**Loan No. 43**

176.    Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through one hundred seventy-five (175) inclusive as if fully set forth at length.

177.    Defendant mailed Plaintiff a collection letter dated May 19, 2017 which stated a balance due of $23,683.78 regarding Account# xxx2464 / Reference# 102693837 (Exhibit "D").

178.    Defendant mailed Plaintiff a second collection letter dated June 22, 2017 which once again stated a balance due of $23,683.78 regarding Account# xxx2464 / Reference# 102693837 (Exhibit "F").

179.    Defendant mailed Plaintiff a third collection letter dated August 2, 2017 which once again stated a balance due of $23,683.78 regarding Account# xxx2464 / Reference# 102693837 (Exhibit "H").

180.    All of the collection letters mailed by Defendant to Plaintiff stated a balance due of $23,683.78 regarding Account# xxx2464 / Reference# 102693837 (Exhibits "D", "F", and "H").

181.    The balance due of $23,683.78 regarding Account# xxx2464 / Reference# 102693837 in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") is deceptive, misleading, and a misrepresentation of the amount of the debt owed in comparison with the correct balance stated in Defendant's validation of debt statements (Exhibit "N").

182.    Although the Defendant states a balance due of $23,683.78 regarding Account# xxx2464 / Reference# 102693837 in their collection letters dated May 19, 2017; June 22, 2017;

and August 2, 2017 (Exhibits "D", "F", and "H"), their validation of debt statements (Exhibit "N") state the following balances:

(i)      Account Number 9404413063078-70, loan details as of 12/09/2011, *this statement does not reference Loan No. 43*;

(ii)     Account Number 9404413063078-70, loan details as of 12/23/2011, *this statement does not reference Loan No. 43*;

(iii)    Account Number 9404413063078-70, loan details as of 01/06/2012, *this statement does not reference Loan No. 43*;

(iv)    Account Number 9404413063078-70, loan details as of 01/23/2012, *this statement does not reference Loan No. 43*;

(v)     Account Number 9404413063078-70, loan details as of 02/21/2012, *this statement does not reference Loan No. 43*;

(vi)    Account Number 9404413063078-70, loan details as of 03/23/2012, *this statement does not reference Loan No. 43*;

(vii)   Account Number 9404413063078-70, loan details as of 04/20/2012, *this statement does not reference Loan No. 43*;

(viii)  Account Number 9404413063078-70, loan details as of 05/23/2012, *this statement does not reference Loan No. 43*;

(ix)    Account Number 9404413063078-70, loan details as of 06/22/2012, *this statement does not reference Loan No. 43*;

(x)     Account Number 9404413063078-70, loan details as of 07/18/2012, Total Current Balance: $23,638.92;

(xi)    Account Number 9404413063078-70, loan details as of 07/23/2012, *this statement does not reference Loan No. 43*;

(xii)   Account Number 9404413063078-70, loan details as of 08/02/2012, *this statement does not reference Loan No. 43*;

(xiii)  Account Number 9404413063078-70, loan details as of 08/23/2012, Total Current Balance: $23,752.95;

(xiv)   Account Number 9404413063078-70, loan details as of 09/21/2012, Total Current Balance: $23,858.26;

    (xv)    Account Number 9404413063078-70, loan details as of 10/23/2012, Total Current Balance: $23,960.18; and

    (xvi)    Account Number 9404413063078-70, loan details as of 11/21/2012, Total Current Balance: $24,062.09.

183. Upon information and belief, the sum of $23,683.78 regarding Account# xxx2464 / Reference# 102693837 as stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") correlates to Loan No. 43 as provided in Defendant's validation of debt statements (Exhibit "N") because the sum of $23,683.78 seems to be the closest match, although is very likely to be an incorrect match.

184. The least sophisticated consumer could reasonably believe that the debt can be fully satisfied by making a payment in the sum of $23,683.78 regarding Account# xxx2464 / Reference# 102693837 as stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H").

185. However, there is nothing to prevent the Defendant from accepting a payment in the sum of $23,683.78 and then pursuing collection efforts and seeking to recover an additional sum of $378.31, which would represent the sum of $24,062.09 as stated in the validation of debt statements provided by the Defendant (Exhibit "N").

186. Furthermore, there is nothing to prevent the Defendant from accepting a payment in the sum of $24,062.09 as stated in the validation of debt statements provided by the Defendant (Exhibit "N") and refusing to tender a refund in the sum of $378.31.

187. Furthermore, there is nothing to prevent the Defendant from accepting a payment in the sum of $24,062.09 as stated in the validation of debt statements provided by the Defendant (Exhibit "N") or accepting a payment in the sum of $23,683.78 as stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F",

and "H") and crediting an entirely different account of the Plaintiff or of an entirely different consumer. Afterall, as discussed *infra*, Defendant references a balance of $23,683.78, Account# xxx2464, and Reference# 102693837, however, there is ABSOLUTELY NO SUCH BALANCE, ACCOUNT#, AND/OR REFERENCE# IN ANY of the validation of debt statements provided by the Defendant.

188.    The Defendant clearly makes the least sophisticated consumer confused as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

189.    The balance due of $23,683.78 regarding Account# xxx2464 / Reference# 102693837 in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") is not an accurate balance due.

190.    Such actions were deceptive and confusing as they left the Plaintiff unsure as to the precise amount of the debt owed.

191.    The Defendant failed to properly disclose the amount of the debt, causing the Plaintiff to be uncertain of his rights and leaving him utterly confused as to the total amount he owes now and or in the future.

192.    The Defendant violated 15 U.S.C. § 1692e(2)(A) for misrepresenting the amount of the debt owed by the Plaintiff.

193.    Defendant's collection letters are in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) for misrepresenting the amount of the debt owed, for engaging in deceptive and misleading practices and for failing to state the accurate amounts of the debts.

**Loan No. 44**

194.    Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through one hundred ninety-three (193) inclusive as if fully set forth at length.

195.    Defendant mailed Plaintiff a collection letter dated May 19, 2017 which stated a balance due of $5,043.28 regarding Account# xxx1425 / Reference# 102693696 (Exhibit "D").

196.    Defendant mailed Plaintiff a second collection letter dated June 22, 2017 which once again stated a balance due of $5,043.28 regarding Account# xxx1425 / Reference# 102693696 (Exhibit "F").

197.    Defendant mailed Plaintiff a third collection letter dated August 2, 2017 which once again stated a balance due of $5,043.28 regarding Account# xxx1425 / Reference# 102693696 (Exhibit "H").

198.    All of the collection letters mailed by Defendant to Plaintiff stated a balance due of $5,043.28 regarding Account# xxx1425 / Reference# 102693696 (Exhibits "D", "F", and "H").

199.    The balance due of $5,043.28 regarding Account# xxx1425 / Reference# 102693696 in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") is deceptive, misleading, and a misrepresentation of the amount of the debt owed in comparison with the correct balance stated in Defendant's validation of debt statements (Exhibit "N").

200.    Although the Defendant states a balance due of $5,043.28 regarding Account# xxx1425 / Reference# 102693696 in their collection letters dated May 19, 2017; June 22, 2017;

and August 2, 2017 (Exhibits "D", "F", and "H"), their validation of debt statements (Exhibit "N") state the following balances:

> (i)    Account Number 9404413063078-70, loan details as of 12/09/2011, *this statement does not reference Loan No. 44*;

> (ii)    Account Number 9404413063078-70, loan details as of 12/23/2011, *this statement does not reference Loan No. 44*;

> (iii)    Account Number 9404413063078-70, loan details as of 01/06/2012, *this statement does not reference Loan No. 44*;

> (iv)    Account Number 9404413063078-70, loan details as of 01/23/2012, *this statement does not reference Loan No. 44*;

> (v)    Account Number 9404413063078-70, loan details as of 02/21/2012, *this statement does not reference Loan No. 44*;

> (vi)    Account Number 9404413063078-70, loan details as of 03/23/2012, *this statement does not reference Loan No. 44*;

> (vii)    Account Number 9404413063078-70, loan details as of 04/20/2012, *this statement does not reference Loan No. 44*;

> (viii)    Account Number 9404413063078-70, loan details as of 05/23/2012, *this statement does not reference Loan No. 44*;

> (ix)    Account Number 9404413063078-70, loan details as of 06/22/2012, *this statement does not reference Loan No. 44*;

> (x)    Account Number 9404413063078-70, loan details as of 07/18/2012, *this statement does not reference Loan No. 44*;

> (xi)    Account Number 9404413063078-70, loan details as of 07/23/2012, *this statement does not reference Loan No. 44*;

> (xii)    Account Number 9404413063078-70, loan details as of 08/02/2012, Total Current Balance: $5,035.92;

> (xiii)    Account Number 9404413063078-70, loan details as of 08/23/2012, Total Current Balance: $5,049.48;

> (xiv)    Account Number 9404413063078-70, loan details as of 09/21/2012, Total Current Balance: $5,071.75;

(xv)    Account Number 9404413063078-70, loan details as of 10/23/2012, Total Current Balance: $5,094.94; and

(xvi)    Account Number 9404413063078-70, loan details as of 11/21/2012, Total Current Balance: $5,118.33.

201.    Upon information and belief, the sum of $5,043.28 regarding Account# xxx1425 / Reference# 102693696 as stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") correlates to Loan No. 44 as provided in Defendant's validation of debt statements (Exhibit "N") because the sum of $5,043.28 seems to be the closest match, although is very likely to be an incorrect match.

202.    The least sophisticated consumer could reasonably believe that the debt can be fully satisfied by making a payment in the sum of $5,043.28 regarding Account# xxx1425 / Reference# 102693696 as stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H").

203.    However, there is nothing to prevent the Defendant from accepting a payment in the sum of $5,043.28 and then pursuing collection efforts and seeking to recover an additional sum of $75.05, which would represent the sum of $5,118.33 as stated in the validation of debt statements provided by the Defendant (Exhibit "N").

204.    Furthermore, there is nothing to prevent the Defendant from accepting a payment in the sum of $5,118.33 as stated in the validation of debt statements provided by the Defendant (Exhibit "N") and refusing to tender a refund in the sum of $75.05.

205.    Furthermore, there is nothing to prevent the Defendant from accepting a payment in the sum of $5,118.33 as stated in the validation of debt statements provided by the Defendant (Exhibit "N") or accepting a payment in the sum of $5,043.28 as stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") and

crediting an entirely different account of the Plaintiff or of an entirely different consumer. Afterall, as discussed *infra*, Defendant references a balance of $5,043.28, Account# xxx1425, and Reference# 102693696, however, there is ABSOLUTELY NO SUCH BALANCE, ACCOUNT#, AND/OR REFERENCE# IN ANY of the validation of debt statements provided by the Defendant.

206.    The Defendant clearly makes the least sophisticated consumer confused as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

207.    The balance due of $5,043.28 regarding Account# xxx1425 / Reference# 102693696 in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") is not an accurate balance due.

208.    Such actions were deceptive and confusing as they left the Plaintiff unsure as to the precise amount of the debt owed.

209.    The Defendant failed to properly disclose the amount of the debt, causing the Plaintiff to be uncertain of his rights and leaving him utterly confused as to the total amount he owes now and or in the future.

210.    The Defendant violated 15 U.S.C. § 1692e(2)(A) for misrepresenting the amount of the debt owed by the Plaintiff.

211.    Defendant's collection letters are in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) for misrepresenting the amount of the debt owed, for engaging in deceptive and misleading practices and for failing to state the accurate amounts of the debts.

**Loan No. 56**

212.    Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through two hundred eleven (211) inclusive as if fully set forth at length.

213.    Defendant mailed Plaintiff a collection letter dated May 19, 2017 which stated a balance due of $15,514.52 regarding Account# xxx2798 / Reference# 102705264 (Exhibit "D").

214.    Defendant mailed Plaintiff a second collection letter dated June 22, 2017 which once again stated a balance due of $15,514.52 regarding Account# xxx2798 / Reference# 102705264 (Exhibit "F").

215.    Defendant mailed Plaintiff a third collection letter dated August 2, 2017 which once again stated a balance due of $15,514.52 regarding Account# xxx2798 / Reference# 102705264 (Exhibit "H").

216.    All of the collection letters mailed by Defendant to Plaintiff stated a balance due of $15,514.52 regarding Account# xxx2798 / Reference# 102705264 (Exhibits "D", "F", and "H").

217.    The balance due of $15,514.52 regarding Account# xxx2798 / Reference# 102705264 in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") is deceptive, misleading, and a misrepresentation of the amount of the debt owed in comparison with the correct balance stated in Defendant's validation of debt statements (Exhibit "N").

218.    Although the Defendant states a balance due of $15,514.52 regarding Account# xxx2798 / Reference# 102705264 in their collection letters dated May 19, 2017; June 22, 2017;

and August 2, 2017 (Exhibits "D", "F", and "H"), their validation of debt statements (Exhibit "N") state the following balances:

(i)      Account Number 9404413063078-70, loan details as of 12/09/2011, *this statement does not reference Loan No. 56*;

(ii)     Account Number 9404413063078-70, loan details as of 12/23/2011, Total Current Balance: $14,911.82;

(iii)    Account Number 9404413063078-70, loan details as of 01/06/2012, *this statement does not reference Loan No. 56*;

(iv)     Account Number 9404413063078-70, loan details as of 01/23/2012, Total Current Balance: $14,989.95;

(v)      Account Number 9404413063078-70, loan details as of 02/21/2012, Total Current Balance: $15,070.82;

(vi)     Account Number 9404413063078-70, loan details as of 03/23/2012, Total Current Balance: $15,162.85;

(vii)    Account Number 9404413063078-70, loan details as of 04/20/2012, Total Current Balance: $15,240.93;

(viii)   Account Number 9404413063078-70, loan details as of 05/23/2012, Total Current Balance: $15,327.38;

(ix)     Account Number 9404413063078-70, loan details as of 06/22/2012, Total Current Balance: $15,416.62;

(x)      Account Number 9404413063078-70, loan details as of 07/18/2012, *this statement does not reference Loan No. 56*;

(xi)     Account Number 9404413063078-70, loan details as of 07/23/2012, Total Current Balance: $15,497.49;

(xii)    Account Number 9404413063078-70, loan details as of 08/02/2012, Total Current Balance: $15,525.38;

(xiii)   Account Number 9404413063078-70, loan details as of 08/23/2012, Total Current Balance: $15,583.94;

(xiv)    Account Number 9404413063078-70, loan details as of 09/21/2012, Total Current Balance: $15,684.79;

(xv)    Account Number 9404413063078-70, loan details as of 10/23/2012, Total Current Balance: $15,798.34; and

(xvi)   Account Number 9404413063078-70, loan details as of 11/21/2012, Total Current Balance: $15,911.90.

219.    Upon information and belief, the sum of $15,514.52 regarding Account# xxx2798 / Reference# 102705264 as stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") correlates to Loan No. 56 as provided in Defendant's validation of debt statements (Exhibit "N") because the sum of $15,514.52 seems to be the closest match, although is very likely to be an incorrect match.

220.    The least sophisticated consumer could reasonably believe that the debt can be fully satisfied by making a payment in the sum of $15,514.52 regarding Account# xxx2798 / Reference# 102705264 as stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H").

221.    However, there is nothing to prevent the Defendant from accepting a payment in the sum of $15,514.52 and then pursuing collection efforts and seeking to recover an additional sum of $397.38, which would represent the sum of $15,911.90 as stated in the validation of debt statements provided by the Defendant (Exhibit "N").

222.    Furthermore, there is nothing to prevent the Defendant from accepting a payment in the sum of $15,911.90 as stated in the validation of debt statements provided by the Defendant (Exhibit "N") and refusing to tender a refund in the sum of $397.38.

223.    Furthermore, there is nothing to prevent the Defendant from accepting a payment in the sum of $15,911.90 as stated in the validation of debt statements provided by the Defendant (Exhibit "N") or accepting a payment in the sum of $15,514.52 as stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") and crediting an entirely different account of the Plaintiff or of an entirely different

consumer. Afterall, as discussed *infra*, Defendant references a balance of $15,514.52, Account# xxx2798, and Reference# 102705264, however, there is ABSOLUTELY NO SUCH BALANCE, ACCOUNT#, AND/OR REFERENCE# IN ANY of the validation of debt statements provided by the Defendant.

224.    The Defendant clearly makes the least sophisticated consumer confused as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

225.    The balance due of $15,514.52 regarding Account# xxx2798 / Reference# 102705264 in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") is not an accurate balance due.

226.    Such actions were deceptive and confusing as they left the Plaintiff unsure as to the precise amount of the debt owed.

227.    The Defendant failed to properly disclose the amount of the debt, causing the Plaintiff to be uncertain of his rights and leaving him utterly confused as to the total amount he owes now and or in the future.

228.    The Defendant violated 15 U.S.C. § 1692e(2)(A) for misrepresenting the amount of the debt owed by the Plaintiff.

229.    Such actions were further deceptive and confusing as they left the Plaintiff unsure as to the correlation between ANY of the reference numbers listed in the collection letters and the validation of debt statements provided by Defendant (Exhibits "D", "F", "H", and "N").

230.    Such actions were further deceptive and confusing as they left the Plaintiff unsure as to the correlation between ANY of the account numbers listed in the collection letters and the validation of debt statements provided by Defendant (Exhibits "D", "F", "H", and "N").

231.     Such actions were further deceptive and confusing as they left the Plaintiff unsure as to the correlation between ANY of the account balances listed in the collection letters and the validation of debt statements provided by Defendant (Exhibits "D", "F", "H", and "N").

232.     Defendant's letters are in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) for misrepresenting the amount of the debt owed, for engaging in deceptive and misleading practices and for failing to state the accurate amounts of the debts.

**Third Party Disclosure**
**15 U.S.C. § 1692c(b)**

233.     Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through two hundred thirty-two (232) inclusive as if fully set forth at length.

234.     The said collection letters unlawfully engaged in third party disclosure.

235.     Defendant contacted Plaintiff at his place of employment by mailing a collection letter to his employer dated May 19, 2017 (Exhibit "D") which was opened and read by his managing attorney.  The letter was addressed to the following address:

Leonard R Gendelberg
1701 AVENUE P
% MAXIM MAXIMOV ESQ
BROOKLYN, NY 11229-1205

236.     Defendant once again contacted Plaintiff at his place of employment by mailing a second collection letter to his employer dated June 22, 2017 (Exhibit "F") which was once again opened and read by his managing attorney.  The letter was addressed to the following address:

Leonard R Gendelberg
1701 AVENUE P
% MAXIM MAXIMOV ESQ
BROOKLYN, NY 11229-1205

237.    Defendant once against contacted Plaintiff at his place of employment by mailing a third collection letter to his employer dated August 2, 2017 (Exhibit "H") which was once again opened and read by his managing attorney.   The letter was addressed to the following address:

Leonard R. Gendelberg
c/o Maxim Maximov, ESQ
1701 Ave P
Brooklyn, NY 11229

238.    Plaintiff does not accept mail at his place of employment.

239.    Plaintiff has never authorized the Defendant to mail any communications to his place of employment.

240.    Plaintiff has never impliedly and/or expressly provided consent to Defendant to mail any communications to his place of employment.

241.    Plaintiff has never mailed any communications to the Defendant from his place of employment.   All communications addressed to the Defendant came from Plaintiff's home address.

242.    Any authorization, if any, provided to the original creditor does not extend such authorization to any third parties, i.e. Defendant.

243.    Any consent, if any, provided to the original creditor does not extend such consent to any third parties, i.e. Defendant.

244.    The collection letter dated May 19, 2017 (Exhibit "D") which Defendant mailed to the Plaintiff's employer did not attempt to correct or confirm location information of the Plaintiff but, rather, stated that Plaintiff owed a debt and provided highly personal information such as creditor's name, balance due, and indicated that the balances have "charged off".   A "charge off account", typically understood by many people as an amount of debt which is

unlikely to be collected and occurs when a consumer becomes severely delinquent on a debt, is certainly information which an employee does not want an employer to discover and would prefer to be kept private.

245.    The second collection letter dated June 22, 2017 (Exhibit "F") which Defendant once again mailed to the Plaintiff's employer similarly did not attempt to correct or confirm location information of the Plaintiff but, rather, once again stated that Plaintiff owed a debt and provided highly personal information such as creditor's name, balance due, and indicated that the balances have "charged off". This is certainly information which an employee does not want an employer to discover and would prefer to be kept private.

246.    The third collection letter dated August 2, 2017 (Exhibit "H") which Defendant once again mailed to the Plaintiff's employer similarly did not attempt to correct or confirm location information of the Plaintiff but, rather, once again stated that Plaintiff owed a debt and provided highly personal information such as creditor's name, balance due, and indicated that the balances have "charged off". This is certainly information which an employee does not want an employer to discover and would prefer to be kept private.

247.    15 U.S.C. § 1692c(b) states:

> Communication with third parties – Except as provided in section 1692b of this title, without the prior consent of the consumer given **directly** to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post-judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

248.    Notably absent from the list of individuals or entities that a debt collector may communicate with is the debtor's employer. Under the plain language of this statute, a violation

occurs when a debt collector sends a collection letter to the debtor's place of employment absent consent.

249.    In *Evon v. Law Offices of Sidney Mickell* (U.S. Court of Appeals for the Ninth Circuit, 310-16615, D.C. No. 2:09-cv-00760-JAM-KJN), the court held that the debt collector "knew or could reasonably anticipate" that a letter sent to a debtor's employer "might be opened and read by someone other than the debtor as it made its way to him/her."  It also observed that, because of the return address, someone handling the plaintiff's mail would know that she "was receiving legal mail, a fact many people would prefer be kept private," and that "disclosing a consumer's personal affairs to his or her employer is a form of collection abuse." *Id.*  The court found support for its ruling in the Federal Trade Commission's FDCPA Staff Commentary.  The Commentary provided that a debt collector cannot "send a written message that is easily accessible to third parties" and can use an "in care of" letter only "if the consumer lives at, or accepts mail at, the other party's address."

250.    Congress enacted the FDCPA in 1968 in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors [which] contribute to the number of personal bankruptcies, to marital instability, to the **loss of jobs**, and to invasions of individual privacy."  15 U.S.C. § 1692(a).

251.    Congress intended the Act to eliminate unfair debt-collection practices such as embarrassing communications.  The Senate Report explicitly stated: Collection abuse takes many forms, including … disclosing a consumer's personal affairs to friends, neighbors, or an employer. Sen. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

252.   A debt collector violates the Fair Debt Collection Practices Act by sending a collection letter to the debtor's employer's address even if the letter is addressed to the debtor "in care of" the employer, the U.S. Court of Appeals for the Ninth Circuit has ruled.  *Id.*

253.   In its August 1, 2012, majority decision in *Evon v. Law Offices of Sidney Mickell*, the Ninth Circuit held that, absent the debtor's consent, sending a collection letter addressed to a debtor "in care of" the debtor's employer is a per se violation of the prohibition on third-party communications in Section 1692c(b) of the FDCPA.   See also: *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1168 (9th Cir.2006).

254.   As the Senate Report noted, disclosing a consumer's personal affairs to his or her employer is a form of collection abuse.   The Act was explicitly intended to protect consumers from these types of communications.   The Federal Trade Commission ("FTC") Commentary prohibits this type of conduct.   In its Staff Commentary, the FTC stated:

> Accessibility by third party. A debt collector may not send a written message that is easily accessible to third parties.   For example, he may not use a computerized billing statement that can be seen on the envelope itself.   A debt collector may use an "in care of" letter only if the consumer lives at, or accepts mail at, the other party's address.   Staff Commentary, 53 Fed.Reg. 50097–02 (Dec. 13, 1988) (emphasis added).

255.   Permitting debt collectors to send letters addressed to the debtor in "care of" the debtor's employer absent the debtor's consent would allow debt collectors to circumvent the protection inherent in section 1692c(b).   It would also impermissibly place the burden on the consumer to affirmatively contact the debt collector to notify it that communications to third parties are unacceptable.

256.   Defendant's acts manifestly constitute a violation.   Defendant knew or could reasonably anticipate that a letter sent to an employer might be opened and read by someone

other than the debtor as it made its way to him.  This is exactly what the Act is designed to prevent.

257.    Plaintiff has suffered actual damages as a result of these unlawful collection communications.  Plaintiff has received numerous letters being denied for credit as a result of the accounts in the instant matter appearing on his credit bureau reports.  Such denial letters have prevented Plaintiff from securing various personal credit.  Plaintiff has suffered actual damages in the form of humiliation, anger, anxiety, emotional distress, fear, frustration, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy at the Plaintiff's workplace.

### Failure to Validate Debt
### 15 U.S.C. § 1692g(b)

258.    Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through two hundred fifty-seven (257) inclusive as if fully set forth at length.

259.    The said collection letters and validation of debt documentation mailed to Plaintiff (Exhibits "D", "F", "H", and "N") failed to validate the debt.

260.    Plaintiff mailed Defendant a letter dated June 20, 2017 requesting validation of debt and stated as follows: (Exhibit "E")

> It is impossible to determine the validity of the accounts referenced in the letters.  The reference numbers 102693696, 102693837, 102704246, and 102705264 do not match up to any accounts in my student loan file.  The amounts allegedly due at charge-off, i.e. $5,043.28, $23,683.78, $33,081.63, and $15,514.52 also do not match up to any accounts in my student loan file.  Furthermore, the account numbers XXX1425, XXX2464, XXX3337, and XXX2798 do not match up to any accounts in my student loan file.  As such, in accordance with the Fair Debt Collection Practices Act ("FDCPA"), I am writing to respectfully request that Capital

Management, within thirty (30) days upon receipt of this letter, provide me with the following validation documents:

(i)      The full account number to each alleged account;

(ii)     The date that a debt was incurred to each alleged account;

(iii)    Current balances owed on each alleged account;

(iv)     Complete payment history on each alleged account;

(v)      Complete itemization of all charges (e.g., principal, fees, interest, etc.) on each alleged account;

(vi)     Copy of signed agreement(s) to each alleged account;

(vii)    Copy of all invoices, bills, and notices concerning each alleged account;

(viii)   Copy of the first written communication attempting to collect the debt on each alleged account;

(ix)     Copy of any judgment, if applicable, obtained with respect to each alleged account;

(x)      Proof that the statute of limitations has not already expired on each alleged account;

(xi)     Copy of all reports or notices provided to any credit bureaus with respect to each alleged account;

(xii)    Identification of the original creditor with respect to each alleged account; and

(xiii)   Identification of the current creditor with respect to each alleged account.

261.    Plaintiff sent a follow up letter dated July 26, 2017 (Exhibit "G") to Defendant once again requesting validation of debt.

262.    On August 2, 2017, Defendant finally mailed documentation which simply provided copies of monthly statements (Exhibit "N"). Other than the provided copies of monthly

statements, Defendant has not provided any other information and/or documentation to the Plaintiff.

263.    Defendant conveniently omitted providing the requested information.

264.    Defendant conveniently omitted providing the requested documentation.

265.    Defendant failed to provide any validation of debt documentation that validates the debt.

266.    15 U.S.C. § 1692g(b) states:

> "[i]f the consumer notifies the debt collector in writing" within thirty days of receiving "communication . . . in connection with the collection of any debt," that he disputes any portion of the debt, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains **verification of the debt**.

267.    In *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999), the court stated: [V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is **what the creditor is claiming is owed**. *Chaudhry*, 174 F.3d at 406. Thus, the court held that the verification requirements under 15 U.S.C. § 1692g(b) were met where the debt collector "forwarded a copy of the [creditor]'s computerized summary of the Chaudhrys' loan transactions . . . includ[ing] a running account of the debt amount, a description of every transaction, and the date on which the transaction occurred." *Id.*

268.    In *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025 (6th Cir. 1992), the court stated: "that no independent investigation" is required under the FDCPA. *Id.* at 1032. This statement, however, referred to determining whether the amount demanded by the collector was **accurate** in order to avoid liability under 15 U.S.C. § 1692e(2)(A) by falsely representing the amount of the debt.

269.    In *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1173 (9th Cir. 2006), [the debt collector] "obtained information from [the creditor] about the nature and balance of the outstanding bill and provided the [debtor] with documentary evidence in the form of the itemized statement." *Id.* at 1174.    See also: *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.1991) (holding that computer printouts which confirmed amounts of debts, the services provided, and the dates on which the debts were incurred constituted sufficient verification)[4].

270.    These cases reflect that an itemized accounting detailing the transactions in an account that have led to the debt is often the best means of accomplishing that objective.

271.    In today's world of computerized records management, it would not be a significant burden to Defendant to provide such a record.    After all, that is precisely what the debt collector did in *Clark* in 2006, in *Mahon* and *Chaudhry*, both cases from 1999, and even in *Graziano*, a case from 1991.    For the Defendant to fail to provide such documentation in the year of 2017 is simply unfortunate and a clear indication that Defendant engages in unlawful behavior which effects numerous consumers.

272.    The reference number 102693696 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

273.    The reference number 102693837 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not

---

[4] "When a term is undefined, we give it its ordinary meaning." United States v. Santos, 553 U.S. 507, 511, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008)).   "As in all cases of statutory construction, our task is to interpret the words of [the statute] in light of the purposes Congress sought to serve".   Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 118, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 608, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979)).

correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

274.    The reference number 102704246 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

275.    The reference number 102705264 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

276.    The account number XXX1425 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

277.    The account number XXX2464 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

278.    The account number XXX3337 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

279.    The account number XXX2798 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

280.    The balance due of $5,043.28 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

281.    The balance due of $23,683.78 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

282.    The balance due of $33,081.63 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

283.    The balance due of $15,514.52 stated in Defendant's collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") does not correlate to any account(s) in the validation of debt statements provided by Defendant (Exhibit "N").

284.    Defendant failed to provide a valid reference number which correlates to ANY of the validation of debt statements provided to Plaintiff (Exhibits "D", "F", "H", and "N").

285.    Defendant failed to provide a valid account number which correlates to ANY of the validation of debt statements provided to Plaintiff (Exhibits "D", "F", "H", and "N").

286.    Defendant failed to provide an accurate account balance which correlates to ANY of the validation of debt statements provided to Plaintiff (Exhibits "D", "F", "H", and "N").

287.    Defendant conveniently mailed validation of debt statements which contained reference numbers that did not correlate to ANY accounts, account numbers which did not correlate to ANY accounts, and/or accurate account balances due which did not correlate to ANY accounts (Exhibits "D", "F", "H", and "N").

288.    Defendant failed to confirm in writing that the account balances being demanded are accurate.  U.S.C. § 1692g(b) requires "verification of the debt".  Clearly, mailing validation of debt statements which contained reference numbers that did not correlate to ANY accounts, account numbers which did not correlate to ANY accounts, and/or accurate account balances due which did not correlate to ANY accounts (Exhibits "D", "F", "H", and "N") is not a lawful form encompassing the "**verification of the debt**".  Clearly, mailing validation of debt statements which contained reference numbers that did not correlate to ANY accounts, account numbers which did not correlate to ANY accounts, and/or accurate account balances due which did not correlate to ANY accounts (Exhibits "D", "F", "H", and "N") is not a justifiable means of verifying "**what the creditor is claiming is owed**" (*Chaudhry*, 174 F.3d at 406).  Clearly, mailing validation of debt statements which contained reference numbers that did not correlate to ANY accounts, account numbers which did not correlate to ANY accounts, and/or accurate account balances due which did not correlate to ANY accounts (Exhibits "D", "F", "H", and "N") is not a justifiable means of verifying that "**the amount demanded by the collector was accurate**" *(Smith,* 953 F.2d at 1025).  Clearly, failing to provide **itemized accounting details** and conveniently mailing validation of debt statements which contained reference numbers that did not correlate to ANY accounts, account numbers which did not correlate to ANY accounts, and/or accurate account balances due which did not correlate to ANY accounts (Exhibits "D", "F", "H", and "N") is not a lawful means of validating debt (*Clark,* 460 F.3d at 1162; *Graziano,* 950 F.2d at 113).  The documentation provided by the Defendant is not enough under the FDCPA, a statute intended to protect consumers.  Although the documentation does not have to be extensive, it must at least provide documentation which evidences that the account balances

listed in the validation of debt documentation match the amounts listed in the collection letters – something that Defendant has clearly failed to provide.

289.    Defendant failed to provide verification of the debt as required by 15 U.S.C. § 1692g(b).

290.    Defendant's acts are clearly a violation of 15 U.S.C. § 1692g(b).

**Failing to disclose that the balance may increase due to interest and fees.**
**15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10)**

291.    Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through two hundred ninety (290) inclusive as if fully set forth at length.

292.    The collection letters dated May 19, 2017; June 22, 2017; and August 2, 2017 (Exhibits "D", "F", and "H") were further deceptive and misleading as they merely identified the total balances due yet failed to disclose that the balances may increase due to interest and fees.

293.    The said collection letters were confusing to the Plaintiff and is likely to be misconstrued by the "least sophisticated consumer" since it is open to more than one reasonable interpretation, at least one of which is inaccurate.   The Second Circuit stated in *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 74 (2d Cir. 2016):

> "The question presented is whether a collection notice that states a consumer's "current balance," but does not disclose that the balance <u>may</u> increase due to interest and fees, complies with this provision.  We hold that Section 1692e requires debt collectors, when they notify consumers of their account balance, to disclose that the balance <u>may</u> increase due to interest and fees."

294.    The holding of the Second Circuit is that Section 1692e of the FDCPA requires every debt collector in every collection letter "to disclose that the balance <u>may</u> increase due to interest and fees".

295.     However, if the account balance will never increase and the holder of the debt will always accept payment of the amount set forth in full satisfaction of the debt then the Second Circuit alternatively stated:

> "We hold that a debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice *either* accurately informs the consumer that the amount of the debt stated in the letter will increase over time, *or* clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt." *Id.* at 817. The Second Circuit in *Avila* did not "hold that a debt collector must use any particular disclaimer" *Id.*

296.     However, the Second Circuit did address all the possible scenarios: 1) If the "current balance" could increase over time, then the collection notice must disclose that the "balance might increase due to interest and fees". *Id.*; 2) If the "current balance" is currently increasing, then the collection notice must disclose that the amount of the debt stated, "in the letter will increase over time". *Id.*; 3) If the "current balance" will never increase and the debt collector is always willing to accept this "specified amount" in "full satisfaction" of the debt, then the debt collector must state so clearly. However, if a debt collector is willing to accept a "specified amount" in full satisfaction of the debt only if payment is made by a specific date, then the debt collector must simplify the consumer's understanding by so stating, while advising that the amount due could increase by the accrual of additional interest or fees if payment is not received by that date.

297.     In the instant matter, the collection letters did not disclose that the amounts of the debts stated in the collection letters "could" or "will" increase over time.

298.     The Plaintiff, as well as the "least sophisticated consumer" was unsure as to whether the respective accounts were accruing interest.

299.    The collection letters failed to include the safe harbor language set out by the Second Circuit.

300.    The amounts due in the instant matter were for amounts that included original principal, fees, and contractual interest.

301.    The Plaintiff was left uncertain as to whether the amounts due were accruing interest as there was no disclosure that indicated otherwise.

302.    The Plaintiff was left unsure whether the amounts due would accrue any type of fees, costs and/or disbursements as there was no disclosure that indicated otherwise.

303.    A reasonable consumer could read the notice and be misled into believing that he could pay his debt in full by paying the amount listed on the notices.

304.    In fact, however, since contractual interest is automatically accruing daily, and since there will be undisclosed fees that will accrue, a consumer who pays the amounts due stated on the notices will not know whether the debt has been paid in full.

305.    The debt collector could still seek the automatically accrued contractual interest that accumulated after the notices were sent but before the balances were paid, or sell the consumer's debts to a third party, which itself could seek the interest and undisclosed fees from the consumer.

306.    The mere statements of the total amounts due without notice that the amounts may increase or are already increasing due to automatically accruing contractual interest, would mislead the least sophisticated consumer into believing that payment of the amount stated will clear his account.

307.    The FDCPA requires debt collectors, when notifying consumers of their account balance, to disclose that the balance may increase due to interest and fees; failure to include such

disclosures would harm consumers such as the Plaintiff who may hold the reasonable but mistaken belief, that timely payment will satisfy their debts and it would abrogate the Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e.

308.    The amount of the contractual interest automatically increases each day that the defaulted debt remains unpaid due to the automatically accrued interest.

309.    Collection notices that state only the amount due, but do not disclose that the balance <u>might</u> increase due to interest and fees, are "misleading" within the meaning of Section 1692e.

310.    To the extent that the Creditor or Defendant intended to waive the automatically accrued and accruing interest, it was required to disclose that in the most conspicuous of terms.

311.    If the amounts due would never increase and the debt collector is always willing to accept this "specified amount" in "full satisfaction" of the debt, then the debt collector must clearly state that the holder of the debt will <u>always</u> accept payment of the amount set forth in "full satisfaction" of the debt.

312.    Defendant was required to include a disclosure that the automatically accrued interest <u>was</u> accruing, or in the alternative, the Defendant was required to disclose that the creditor has made an intentional decision to waive the automatically accruing interest and will always accept this "specified amount" in "full satisfaction" of the debt, nonetheless it did not make any of those disclosures in violation of 1692e.

313.    If interest was waived, the letters would need to contain that disclosure and clearly state that no interest is accruing on this account in order to provide full and fair disclosure to consumers of the actual balance as is embodied in Section 1692e.

314. The Second Circuit adopted a safe harbor disclaimer stating "that requiring such disclosure best achieves the Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e. It also protects consumers such as the Plaintiff, who may hold the reasonable but mistaken belief that timely payment will satisfy their debts."[5]

315. Because the statement of the amounts due that included original principal, fees, and contractual interest, without notice that the accruing interest was expressly waived can mislead the least sophisticated consumer into believing that payment of the amount stated will clear his account, the FDCPA requires debt collectors, when they notify consumers of their account balance, to expressly disclose that the amount of the debt stated in the letter <u>will</u> increase over time, *or* clearly state that the holder of the debt will always accept payment of the amount set forth in full satisfaction of the debt. *Id.* at 817.

316. Requiring such disclosure best achieves the Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e. It also protects consumers such as the Plaintiff, who may hold the reasonable, but mistaken belief that timely payment will satisfy their debts and it protects them from other debt collectors seeking further interest on this debt in the future.

317. According to the Second Circuit's finding that the amount due must contain a full and fair disclosure, if a credit card account was being charged interest, pursuant to a contract and the interest was intended to be waived, disclosure of such a waiver is necessary or the consumer would not know what the balance is. "[I]n fact, however, if interest is accruing daily, [or was not expressly waived] a consumer who pays the 'current balance' stated on the notice will not know whether the debt has been paid in full. The debt collector could still seek the [accruing or unwaived] interest and fees that accumulated after the notice was sent but before the balance was

---

[5] *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76 (2d Cir. 2016).

paid, or sell the consumer's debt to a third party, which itself could seek the interest and fees from the consumer." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76 (2d Cir. 2016).

318.    The 8th Circuit in *Haney v. Portfolio Recovery Assocs.*, No. 15-1932, 2016 U.S. App. LEXIS 17287 (8th Cir. Sep. 21, 2016) clearly explains that merely not including interest in post charge off statements is not express waiver of interest, and the debt collector or creditor can seek the interest in the future.

319.    In fact, in this case, the Plaintiff is still not sure whether there was any intent to waive the interest.  There was no express waiver and disclosure of waiver is mandatory if interest was originally accruing per the contract.  The consumer could not know what the real balances are.

320.    The intent to waive a contractual right must be unmistakably manifested and may not be inferred from doubtful or equivocal acts.[6]  A waiver of a contract right does not occur by negligence, oversight or thoughtlessness and cannot be inferred from mere silence.[7]

321.    The 8th Circuit Court of Appeals found that the fact that the debt was charged off and that the creditor or debt buyer did not charge interest in its statements post charge off that alone does not constitute an express waiver and interest is continuing to accrue and may be charged at a future time.

322.    According to the Second Circuit in *Avila*, any debt that <u>was</u> accruing interest and fees would need full and complete disclosure which would either clearly state that the balance

---

[6] *Navillus Tile, Inc. v. Turner Const. Co.*, 2 A.D.3d 209, 770 N.Y.S.2d 3 (1st Dep't 2003).

[7] *Acumen Re Management Corp. v. General Sec. Nat. Ins. Co.*, 2012 WL 3890128, at *6 (S.D. N.Y. 2012), reconsideration denied, motion to certify appeal granted, 2012 WL 6053936 (S.D. N.Y. 2012).

"may" or "will" increase over time or clearly state that the debt is "static" and holder of the debt will always accept payment of the amount set forth in "full satisfaction" of the debt.[8]

323.    Failure to disclose such a waiver of the automatically accruing interest is in of itself deceptive and "misleading" within the meaning of Section 1692e since Courts have held that <u>even</u> if the right to collect interest was waived by the creditor, debt collectors could still charge interest and they would not violate the FDCPA for charging interest if the original credit card agreement permitted the charging of interest on late payments.[9]

324.    The Defendant knew that the balances on the said accounts would increase due to interest, fees and/or disbursements.

325.    Since the amounts due are for amounts that include original principal, fees, and contractual interest, the collection notices must accurately inform the consumer that interest may accrue or that interest has stopped accruing.  "Applying these principles, we hold that Plaintiffs have stated a claim that the collection notices at issue here are misleading within the meaning of

---

[8] *Haney v. Portfolio Recovery Assocs.*, No. 15-1932, 2016 U.S. App. LEXIS 17287 (8th Cir. Sep. 21, 2016) ("Nothing inherent in the process of charging off a debt precludes a claim for statutory interest, and [the states] prejudgment interest statute does not expressly preclude statutory prejudgment interest following a waiver of contractual interest ... [The debtor] received monthly periodic statements from the original creditors prior to charge-off, and at least as to the *Wal-Mart* account, the charge-off statement itself is attached to the pleadings.  [The debtor] received a demand for payment of his accounts when due. We conclude any demand requirement that exists as a precondition to the accrual of statutory prejudgment interest was satisfied by the original creditors' demands upon [the debtor].")

[9] *Rice v. Resurgent Capital Servs., L.P.*, No. 15 CV 6319 (KAM)(CLP), 2017 U.S. Dist. LEXIS 20932, at *19-20 (E.D.N.Y. Feb. 13, 2017) ("[C]ourts in other districts have held that even if the right to collect interest was waived by the creditor, debt collectors do not violate Section 1692f(1) if the original credit card agreement permitted the charging of interest on late payments.); *Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp. 3d 1103, 1110 (N.D. Ill. 2014) (granting summary judgment on the Section 1692f(1) claim and holding that, "even if BOA waived its right to collect [*20] interest, Defendants cannot have violated 1692f(1) if the original agreement between Mr. Simkus and BOA allowed for charging interest on late payments"); *Wilder v. J.C. Christensen & Assocs., Inc.*, No. 16 CV 1979, 2016 U.S. Dist. LEXIS 168440, 2016 WL 7104283, at *7 (N.D. Ill. Dec. 6, 2016) (granting the motion to dismiss and holding that, "Plaintiff's allegation that Defendant engaged in 'unfair' or 'unconscionable' conduct by claiming that interest 'may' be added to Plaintiff's account is not a violation of Section 1692f(1) even if she could demonstrate that Credit One waived its contractual right".); See also *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 544 (N.D. Ill. 2012) (granting the motion to dismiss the 1692f(1) claim and holding that, "[t]he Court agrees that § 1692f(1) appears to be directed at debt collectors who charge fees not contemplated by the original agreement, not debt collectors who seek to charge fees contemplated by the agreement but arguably waived thereafter".)

Section 1692e … a consumer who pays the "current balance" stated on the notice will not know whether the debt has been paid in full."[10]

326.    The amounts due are for an amount that includes original principal, fees, and contractual interest.  If interest was waived or stopped accruing the collection notice must disclose that the debt is "static" and that the holder of the debt would accept payment of the amount set forth in full satisfaction of the debt.  *McNamee v. Debski & Assocs., P.A.*, No. 8:16-cv-2272-T-33TBM, 2016 U.S. Dist. LEXIS 131912, at \*8-9 (M.D. Fla. Sep. 27, 2016) ("The letters did not inform [the debtor] that *Capital One* had instructed [the debt collector] to cease collecting[] interest ... i.e., that *Capital One* was willing to accept $3,129.05 in full satisfaction of the debt. Because the letters did not "clearly state[] that the holder of the debt [would] accept payment of the amount set forth in full satisfaction of the debt . . ." *Avila*, 817 F.3d at 77, [the debtors] Complaint plausibly states a claim to relief under the FDCPA.") (citations omitted)

327.    Since interest was accruing per the creditor's contract, the collection notice must inform the consumer that the amount of the debts stated in the letters will increase over time.

328.    Collection letters failing to reference the accrual of interest or waiver of interest are subject to two different interpretations as to the accumulation of interest, rendering them deceptive under § 1692e(10).

329.    "None of the letters provided further detail regarding when or how the balance had been calculated, whether it included interest, or whether interest continued to accrue."  The court finds that the "least sophisticated consumer" could have read these letters in at least two different ways.  *On one hand*, an unsophisticated consumer could reasonably conclude that the balance was a fixed amount that would not be subject to further interest, late fees, or other

---

[10] *Avila v. Riexinger & Assocs., LLC*, Nos. 15-1584(L), 15-1597(Con), 2016 U.S. App. LEXIS 5327, at \*10-11 (2d Cir. Mar. 22, 2016).

charges. *On the other*, an unsophisticated consumer could just as reasonably determine that the balance would continue to grow over time as interest accrued. *One of those meanings would necessarily be inaccurate*. Therefore, the court finds that Defendants' letters were deceptive as a matter of law. Courts in other districts have reached the same conclusion on similar facts. The court grants Ms. Snyder's motion for summary judgment on this issue." *Snyder v. Gordon*, No. C11-1379 RAJ, 2012 U.S. Dist. LEXIS 120659, at *8-9 (W.D. Wash. Aug. 24, 2012). "The Court therefore finds that [the debt collectors] letters to [the debtor] are subject to two different interpretations as to the accumulation of interest, rendering them deceptive under § 1692e(10) … The logic [applies] to stated outstanding debt and the need for consumers to be aware that this debt may be dynamic or static. They are concerned with a consumer's inability to discern whether an amount owed may grow with time, regardless of whether offers to settle are on the table or not. As [plaintiff] states, this information is relevant in a consumer's payment calculus, especially when some debts must be paid at the expense of others. And, of course, the existence of settlement offers would be entirely irrelevant to these considerations for the many consumers who are unable to take advantage of them. Plaintiff's claim is not that the stated balance was not itemized, but that it was unclear whether it was subject to future interest". *Michalek v. ARS Nat'l Sys.*, No. 3:11-CV-1374, 2011 U.S. Dist. LEXIS 142976, at *16-17 (M.D. Pa. Dec. 13, 2011).

330.    The Plaintiff and the least sophisticated consumer could conclude from the said collection letter, that the amounts due are static and that his payment of the amount due would satisfy the debts irrespective of when payment was remitted. However, absent a disclosure by the holder of the debt that clearly stated that the holder of the debt would accept payment of the amount set forth in "full satisfaction" of the debt then even if the debtor pays the amounts due, the Defendant and or the creditor *could* still seek the automatic interest that accumulated after the

breach of contract, or sell the consumer's debt to a third party, which itself could seek the automatic interest and from the consumer. *Avila*, at *10-11.

331.    A waiver of interest, even when made explicitly, has not prevented debt collection agencies from continuing to illegally charge the waived interest.  At the bare minimum, a debt collection agency must clearly convey, even to the least sophisticated consumer that it intends to waive the automatically accruing interest, or clearly state that the holder of the debt would always accept payment of the amount set forth in "full satisfaction" of the debt.

332.    Any debtor, who goes ahead and pays the amounts due as stated in the Defendant's letters, will be left unsure as to whether the debts have been paid in full, as the Defendant could always attempt to collect on any interest and fees that may have accumulated after the Defendant's letters were sent, but before the balances due were paid.

333.    The Defendant violated 15 U.S.C. § 1692e(2)(A) for misrepresenting the amount of the debts owed by the Plaintiff.

334.    Section 1692e of the FDCPA prohibits a debt collector from using any false, or any deceptive or misleading representation or means in connection with the collection of a debt, including the false representation of the character, amount or legal status of any debt, see, 15 U.S.C. § 1692e(2)(A) and § 1692e(10).

335.    Upon information and belief, such actions are part of a scheme or business of the Defendant when attempting to collect alleged debts from consumers in the State of New York.

336.    Upon information and belief, the Defendant's collection letters, such as the said May 19, 2017 collection letters, number in at least the hundreds.

337.    The Defendant, by failing to state that it would add interest to the amount of the debts, made materially false statements, in violation of 15 U.S.C. § 1692e of the FDCPA.

338.    Defendant's collection letters are in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) of the FDCPA for the use of any false representation or deceptive means to collect or attempt to collect any debt and for misrepresenting the amount of the debt owed by the Plaintiff.

339.    Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

340.    Plaintiff suffered actual harm by being the target of the Defendant's misleading debt collection communications.

341.    Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

342.    Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

343.    Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

344.    Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendant's collection efforts.

345.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process.

346.    The purpose of the FDCPA is to provide information that helps consumers to choose intelligently.  The Defendant's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

347.    These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

348.    Plaintiff seeks to end these violations of the FDCPA.  Plaintiff has suffered damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.  Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including, declaratory relief, and damages.

## CLASS ALLEGATIONS

349.    Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through three hundred forty-eight (348) inclusive as if fully set forth at length.

350.    This action is brought as a class action.  Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

351.    The identities of all class members are readily ascertainable from the records of Capital Management Services, LP and those business and governmental entities on whose behalf it attempts to collect debts.

352.    Excluded from the Plaintiff's Class is the Defendant and all officers, members, partners, managers, directors, and employees of Capital Management Services, LP, and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

353.    There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members.  The

principal issues are whether Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act.

354.   The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

355.   The Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint.   The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause them not to vigorously pursue this action.

356.   This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(i)   **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

(ii)   **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members.   The principal issues are whether the Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act.

(iii)   **Typicality:** The Plaintiff's claims are typical of the claims of the class members.   Plaintiff and all members of the Plaintiff's Class defined in

this complaint have claims arising out of the Defendant's common uniform course of conduct complained of herein.

(iv)   **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

(v)   **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendant who, on information and belief, collects debts throughout the United States of America.

357.   Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate

provisions of the Fair Debt Collection Practices Act, and is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

358.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

359.    Further, Defendant has acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

360.    Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## CAUSE OF ACTION

361.    Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through three hundred sixty (360) inclusive as if fully set forth at length.

362.    Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendant.

363.    This cause of action is brought on behalf of Plaintiff and the members of a class.

364.    The first class involves all individuals whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letters sent to the Plaintiff on or about May 19, 2017 (Exhibit "D"); and (a) the

collection letters were sent to a consumer seeking payment of a personal debt; and (b) the collection letters were not returned by the postal service as undelivered; and (c) the Plaintiff asserts that the letters contained violations of 15 U.S.C. § 1692, et *seq.* for providing false, deceptive, or misleading representations or means in connection with the collection of any debt; the false representation of the character, amount, or legal status of any debt; and for the threat to take any action that cannot legally be taken, or that is not intended to be taken, in violation of 15 U.S.C. §§ 1692c(b), 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692g(a)(1), 1692g(b).

365.    The second class involves all individuals whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letters sent to the Plaintiff on or about June 22, 2017 (Exhibit "F"); and (a) the collection letters were sent to a consumer seeking payment of a personal debt; and (b) the collection letters were not returned by the postal service as undelivered; and (c) the Plaintiff asserts that the letters contained violations of 15 U.S.C. § 1692, et *seq.* for providing false, deceptive, or misleading representations or means in connection with the collection of any debt; the false representation of the character, amount, or legal status of any debt; and for the threat to take any action that cannot legally be taken, or that is not intended to be taken, in violation of 15 U.S.C. §§ 1692c(b), 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692g(a)(1), 1692g(b).

366.    The third class involves all individuals whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letters sent to the Plaintiff on or about August 2, 2017 (Exhibit "H"); and (a) the collection letters were sent to a consumer seeking payment of a personal debt; and (b) the collection letters were not returned by the postal service as undelivered; and (c) the Plaintiff asserts that the letters contained violations of 15 U.S.C. § 1692, et *seq.* for providing false,

deceptive, or misleading representations or means in connection with the collection of any debt; the false representation of the character, amount, or legal status of any debt; and for the threat to take any action that cannot legally be taken, or that is not intended to be taken, in violation of 15 U.S.C. §§ 1692c(b), 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692g(a)(1), 1692g(b).

367.   The fourth class involves all individuals whom Defendant's records reflect resided in the State of New York and who received validation of debt documentation in substantially the same form as the validation of debt documentation sent to the Plaintiff on or about August 2, 2017 (Exhibit "N"); and (a) the validation of debt documentation were sent to a consumer seeking payment of a personal debt; and (b) the validation of debt documentation was not returned by the postal service as undelivered; and (c) the Plaintiff asserts that the validation of debt documentation contained violations of 15 U.S.C. § 1692g(b).

## Violations of the Fair Debt Collection Practices Act

368.   Plaintiff repeats, reiterates and realleges all of the allegations of this complaint contained in paragraphs one (1) through three hundred sixty-seven (367) inclusive as if fully set forth at length.

369.   The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

370.   Because the Defendant violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in Plaintiff's favor and against the Defendant and award damages as follows:

(i)      Statutory damages provided under the FDCPA, 15 U.S.C. § 1692(k);

(ii)     Attorney fees, litigation expenses and costs incurred in bringing this action; and

(iii)    Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Brooklyn, New York
       October 4, 2017

                                        ___/s/ Maxim Maximov_____
                                        Maxim Maximov, Esq.
                                        Attorneys for the Plaintiff
                                        Maxim Maximov, LLP
                                        1701 Avenue P
                                        Brooklyn, New York 11229
                                        Office: (718) 395-3459
                                        Facsimile: (718) 408-9570
                                        E-mail: m@maximovlaw.com


Plaintiff requests trial by jury on all issues so triable.

                                        ___/s/ Maxim Maximov_____
                                        Maxim Maximov, Esq.